**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JILL A. WITNIK, ) | |
| ) | CASE NO. 14-cv-00257 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Jill A. Witnik ("Witnik") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On October 15, 2010, Witnik filed an application for POD, DIB, and SSI alleging a

disability onset date of October 30, 2009. (Tr. 11.) Her application was denied both initially and upon reconsideration. Witnik timely requested an administrative hearing.

On July 16, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Witnik, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 11.) On August 20, 2012, the ALJ found Witnik was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 17-19.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-two (32) at the time of her administrative hearing, Witnik is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 17.) Witnik has a high school education and past relevant work as a child support officer, check-cashing manager, customer service representative, and a department store clerk. *Id*.

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

2

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Witnik was insured on her alleged disability onset date, October 30, 2009 and remained insured through September 30, 2011. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Witnik must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Witnik established medically determinable, severe impairments, due to migraine headaches, depressive disorder NOS, and anxiety disorder. (Tr. 13.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Witnik was found incapable of performing her past relevant work, but

---

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

was determined to have a Residual Functional Capacity ("RFC") for the full range of work at all exertional levels with certain non-exertional limitations. (Tr. 15, 17.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Witnik was not disabled. (Tr. 17-18.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI.  Analysis

*Treating Sources*

In her first three assignments of error, Witnik asserts that the ALJ erred by failing to give

good reasons for rejecting the opinions of treating sources. (ECF No 16 at 17-21.) Specifically, Witnik asserts that the decision fails to even mention the opinion of psychiatrist Dilbagh Saini, M.D., and did not give good reasons for ascribing "no weight" to the medical source statement of Noreen Brady, Ph.D. *Id*. at 17-20. In addition, while acknowledging that counselor Scott Lee, M.Ed., may not constitute an "acceptable medical source" under the regulations, Witnik avers that the ALJ should have addressed Lee's opinion expressed in a letter to counsel dated February 14, 2012. *Id*. at 20-21, *citing* Tr. 579

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In some circumstances, however, a violation of the "good reasons" rule may be considered "harmless error." The Sixth Circuit has found these circumstances present where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of § 1527(d) - the provision of the

---

Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

procedural safeguard of reasons - even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. *See also Cole v. Astrue,* 661 F.3d 931, 940 (6th Cir. 2011); *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-471 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.,* 148 Fed. Appx. 456, 464 (6th Cir. 2005). In the last of these circumstances, the procedural protections at the heart of the rule may be met when the "supportability" of the doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. *See Nelson*, 195 Fed. Appx. at 470-471 (6th Cir. 2006); *Hall,* 148 Fed. Appx. at 464 (6th Cir. 2005); *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010). In other words, "[i]f the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend*, 375 Fed. Appx. at 551.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's

8

statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

### 1. Dr. Saini

With respect to Dr. Saini, Witnik's argument is premised upon the decision containing "no mention of the opinion of treating psychiatrist Dr. Saini that claimant 'is not consistently able to keep up with her ADLs [activities of daily living] and household chores.'" (ECF No. 18 citing Tr. 490.)[3] Witnik is correct that the decision does not reference this statement. The Commissioner argues that all of Dr. Saini's findings – contained in the February 10, 2011 psychiatric evaluation – merely repeat verbatim the findings made in an earlier Adult Diagnostic Assessment completed on November 26, 2010 by Linton Overholt, a Licensed Professional Clinical Counselor. (ECF No. 17 at 9-10.) The Commissioner is correct that the findings are identical. Nonetheless, the Court declines to draw the inference that Dr. Saini's evaluation is thereby invalidated.

Witnik contends that Dr. Saini is her treating physician. However, while Dr. Saini may have become a treating source at some point during the course of treatment, Witnik does not point to any evidence that she was seen by Dr. Saini at any point *prior* to the psychiatric

---

[3] Witnik's citation is incorrect. The document is located on at page 493 of the transcript.

evaluation performed on February 10, 2011.[4]  One visit does not establish a treating relationship.  Furthermore, any subsequent visits to Dr. Saini are irrelevant in determining whether the February 10, 2011 opinion was that of a treating physician when it was completed.  "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician ***at the time he rendered his opinion***."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 506 (6th Cir. 2006) (emphasis added).  In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that subsequent visits to a physician after the RFC assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *accord Thompson v. Astrue*, 2011 U.S. Dist. LEXIS 84542 (N.D. Ohio, Aug. 2, 2011).  The *Kornecky* court also explained that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others.  *Id*.  In a similar case, the Sixth Circuit, in *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005), found that a physician who only saw the claimant twice was not a treating physician despite the ALJ referring to the physician as such.  The *Daniels* court found as follows:

> Daniels next argues that Dr. Pinson's opinion was not afforded deference by the ALJ. ***  The ALJ's opinion referred, in passing, to Dr. Pinson as a treating source or treating physician, thus adopting Daniels's own characterization of Dr. Pinson. ***  We conclude that the treating source regulations and *Wilson* are not implicated by the facts of this case.  The ALJ's failure to specifically address Dr.

---

[4] In her discussion of her medical history, Witnik first mentions Dr. Saini in the context of his involvement with crafting an Individual Service Plan ("ISP") on her behalf, dated February 8, 2011 – two days prior to the psychiatric evaluation.  (ECF No. 16 at 3, *citing* Tr. 460-63.)  However, Dr. Saini's signature does not appear on the ISP until March 31, 2011.  (Tr. 463.)  As such, February 10, 2011 appears to be the initial point of contact between Witnik and Dr. Saini.

> Pinson's opinion, despite casually referring to her as the treating source, is not surprising given that Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician. The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. The Commissioner will consider a claimant to have an ongoing treatment relationship when "the medical evidence establishes that [the claimant] see[s], or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id*. A physician who has treated a patient only a few times may be considered a treating source if that frequency of visits is appropriate for the claimant's medical condition. *Id*. In this case, Dr. Pinson saw Daniels on two occasions, November 13, 2001, and November 16, 2001. Daniels, however, sought treatment for his back pain on many more occasions than these two visits, including six visits to the emergency room and several other visits to King's Daughters' Outreach Center. Daniels's two visits to Dr. Pinson within the span of a few days is not a frequency consistent with the treatment of back pain, as evidenced by the fact that he received treatment from other sources on many other occasions.

*Daniels*, 152 Fed. App'x at 489-91 (footnotes omitted); *accord Hickman v. Colvin*, 2014 U.S. Dist. LEXIS 82914 (M.D. Tenn. June 18, 2014) ("Precedent in this Circuit suggests that a physician who treats an individual only twice or three times does not constitute a treating source."); *Hakkarainen v. Astrue*, 2012 U.S. Dist. LEXIS 16431 (N.D. Ohio Jan. 19, 2012); *see also Taylor v. Astrue*, 245 Fed. App'x. 387, 391 (5th Cir. 2007) (two visits to doctor did not establish a treating relationship); *Beauchamp v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 37456 at *27 (N.D. Ohio Mar. 21, 2014) ("the treating physician doctrine is based on the assumption that a medical professional has dealt with a claimant and his condition over a long period of time will have a deeper insight into the medical condition than a person who has examined a claimant but once.")

Because Witnik points to no evidence demonstrating that Dr. Saini had treated her prior to the February 2011 evaluation, the Court declines to find that Witnik had established a treating

11

physician/patient relationship at the time of the evaluation. Because Dr. Saini was not a treating physician at the relevant time, the ALJ was not required to set forth good reasons for rejecting his opinion.

Furthermore, to the extent Witnik would argue that the ALJ should have discussed the February 2011 opinion even if Dr. Saini was not a treating source, the Sixth Circuit has noted, "'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky*, 167 Fed. App'x. at 496 (*quoting Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)); *see also Smith v. Astrue*, 2012 U.S. Dist. LEXIS 51364, 2012 WL 1232272 at * 7 (N.D. Ohio April 12, 2012). Here, the ALJ addressed the issue of activities of daily living and found Witnik had moderate restrictions in this area. (Tr. 14.) The ALJ's decision expressly referenced the consultative examination (CE) which occurred on March 17, 2011 – just one month after Dr. Saini's opinion. *Id*. Specifically, the ALJ mentions Witnik's self reported daily activities, which included performing household chores such as washing dishes, laundry, and vacuuming. (Tr. 14, *citing* Tr. 435.) She also prepared breakfast and dinner for her family and helped her son with his homework in the evenings. *Id*. The ALJ implicitly resolved this conflict in the record by not crediting Dr. Saini's opinion as inconsistent with Witnik's self reported limitations.

As such, Witnik's first assignment of error is without merit.

**2. Dr. Brady**

Witnik also argues that the ALJ erred by rejecting the medical source statement signed by treating psychologist Dr. Brady and by counselor Mr. Lee on February 14, 2012. (ECF No. 16 at 19, *citing* Tr. 578.) In a medical source statement concerning Witnik's mental impairments, Mr.

12

Lee and Dr. Brady indicated that Witnik was markedly limited in her ability to remember, understand, and follow simple instructions; perform work activities at a reasonable pace; keep a regular work schedule and maintain punctual attendance; and, make judgments that are commensurate with the functions of unskilled work. (Tr. 578.) They further indicated that Witnik was extremely impaired in her ability to maintain attention and concentration for two-hour periods; interact appropriately with others; and, withstand the stresses and pressures of routine simple unskilled work. *Id*. The ALJ addressed this opinion as follows:

> No weight is given to the medical source statement completed by Ms. Witnik's therapist, Scot Lee, M.ED., PCC, on February 14, 2012 and signed by Noreen Brady, Ph.D. Mr. Lee concluded that Ms. Witnik has marked or extreme limitations in her ability to perform mental work-related activities. He also stated that the severity and persistence of symptoms prevents Ms. Witnik from performing even routine tasks. No weight is given to these findings, as they are inconsistent with the evidence in the record including their own treatment notes [Exhibit 11F]. Specifically, Dr. Brady indicated on December 6, 2011 that Ms. Witnik had a GAF of 55, which indicates moderate symptoms [Exhibit 11F:11]. Records from Nord also indicated that Ms. Witnik has a GAF of 55 [Exhibit 5F:9].

(Tr. 16-17.)

The Commissioner points out that Dr. Brady only saw Witnik on two occasions prior to completing the form, again calling into question whether Dr. Brady qualifies as a treating source. (ECF No. 17 at 12.) Notably, in her reply, Witnik does not dispute the assertion that she saw Dr. Brady on only two occasions prior to the form's completion. (ECF No. 18 at 3-4.) Rather, Witnik contends that such an argument constitutes a *post hoc* rationale and that the ALJ must make the initial determination of whether a medical source qualifies as treating. *Id*. Witnik cites no law to support this assertion. *Id*. In fact, this assertion contradicts the Sixth Circuit's above cited decision in *Daniels*, wherein the court found that a doctor was not a treating source "despite

13

[the ALJ] casually referring to her as the treating source..." 152 Fed. App'x at 490. Moreover, unlike in *Daniels*, the ALJ did not refer to Dr. Brady as a treating source.

The Court finds that Dr. Brady's brief course of treatment did not establish a treating relationship. *See* 20 C.F.R. § 404.1502 ("we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)); *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 37203 at *18 (N.D. Ohio Mar. 20, 2012) ("Two psychiatric visits only one month apart were insufficient to establish a treating relationship, as it is not a frequency consistent with the longitudinal nature of psychiatric treatment."); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 879 (N.D. Ohio 2011) ("Indeed, courts have consistently held that one, or even two or three, examinations will not suffice to establish an ongoing treatment relationship.") (citations omitted); *Lucas v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 75385, *15 (W.D. Mich. July 6, 2010) (two visits did not establish an ongoing relationship)

Finally, assuming for the sake of argument that Dr. Brady did constitute a treating source, the ALJ set forth good reasons for rejecting her opinion. The ALJ pointed out that Dr. Brady ascribed Witnik a Global Assessment of Functioning ("GAF") score of 55 on December 6, 2011, as did Dr. Saini in the psychiatric evaluation completed on February 10, 2011. (Tr. 491-93.) The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 51 and 60 indicates

14

moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See DSM-IV* at 34. The ALJ reasonably identified a stark discrepancy between the **marked and extreme** limitations assessed in the medical source statement contained in a form provided to Witnik's counsel for disability purposes compared to the **moderate** limitations assessed in treatment notes. This material inconsistency constitutes a good reason for rejecting Dr. Brady's opinion.

Witnik argues that GAF scores are obsolete and should not be used in the adjudication of disability claims. (ECF No. 16 at 19-20, ECF No. 18 at 4.) It is true that the Sixth Circuit Court of Appeals has explained that a "GAF score is not particularly helpful by itself" explaining that it is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. App'x. 681, 684 (6th Cir. 2011) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). The *Oliver* court explained that "[a] GAF score is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." *Id.*; *see also* 65 Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.") Furthermore, it also bears noting that an update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* ("DSM-5") at 16 (American Psychiatric Association, 5th ed., 2013). Nonetheless, while GAF scores are not particularly helpful in determining whether a claimant is

15

disabled, there is no indication that a medical professional's decision to assess a GAF score is inappropriate, albeit outdated. Furthermore, in the case at bar, the ALJ was plainly only using the GAF score to identify a glaring contradiction between Dr. Brady's assessment as contained in the medical source statement and Witnik's level of functioning described in treatment notes.

As such, Witnik's second assignment of error is without merit.

### 3. Mr. Lee

Finally, Witnik argues that the ALJ erred by not addressing the opinion Mr. Lee in a letter dated February 14, 2012 – the same date Mr. Lee completed the medical source statement co-signed by Dr. Brady and discussed above.

It does not appear to be contested that Mr. Lee does not constitute an "acceptable medical source" under the regulations. As explained in a decision of the Sixth Circuit Court of Appeals, "[a]n ALJ must consider other-source opinions and generally should explain the weight given to opinions for these 'other sources.' But other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 2014 U.S. App. LEXIS 5848 (6th Cir. 2014) (internal citations and quotation marks omitted).

The Commissioner asserts that the opinions expressed in the letter merely mirrored the functional limitations expressed in the medical source statement completed the same date. (ECF No. 17 at 12.) Witnik disagrees, and asserts the letter and the medical source statement are "very different," but does not offer any meaningful explanation beyond stating that the letter provided a "narrative explanation" of Witnik's limitations. (ECF No. 18 at 4.) The Court agrees with the Commissioner, as the letter provided by Mr. Lee does not provide any meaningful additional information concerning Witnik's work related limitations. Therefore, by discussing the reasons

16

for assigning no weight to the medical source statement completed the same date, the ALJ adequately explained the weight given to Mr. Lee's opinions.

As such, Witnik's third assignment of error is without merit.

*Step Five*

Witnik's fourth and fifth assignments of error appear to be interrelated. (ECF No. 16 at 21-22.) Witnik points out that the ALJ's RFC finding limited her to "no interaction with the general public." As best as this Court can understand Witnik's "argument," she believes the VE's testimony fails to satisfy the Commissioner's burden at Step Five, because unfamiliar, new co-workers would be strangers akin to the general public. Witnik's argument conveniently ignores the fact that the ALJ further found that she could, however, have superficial interaction with co-workers and supervisors. (Tr. 15.) Furthermore, Witnik cites no law in support of her argument and makes only an unexplained reference to Social Security Ruling 85-15. (ECF Nos. 16 at 22, 18 at 6.) It is not this Court's function to develop an argument on a plaintiff's behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). As such, the Court deems the fourth and fifth assignments of error waived.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor

of the defendant.

    IT IS SO ORDERED.

                                      <u>/s/ Greg White</u>
                                      U.S. Magistrate Judge

Date: February 18, 2015